980 So.2d 1112 (2008)
William HAMES, Appellant,
v.
The CITY OF MIAMI FIREFIGHTERS' AND POLICE OFFICERS' TRUST, Appellee.
No. 3D07-186.
District Court of Appeal of Florida, Third District.
March 5, 2008.
Rehearing and Rehearing Denied May 30, 2008.
*1113 Richard F. O'Brien, III, Miami, for appellant.
Weiss Serota Helfman Pastoriza Cole & Boniske, P.L. and John J. Quick and Joseph H. Serota, H. Miami; Cypen & Cypen and Stephen H. Cypen, Miami Beach, and Alison S. Bieler and Laura K. Wendell, Miami, for appellee.
Before WELLS, ROTHENBERG, and SALTER, JJ.
Rehearing and Rehearing En Banc Denied May 30, 2008.
ROTHENBERG, J.
William Hames ("Hames") appeals from a final forfeiture order of the City of Miami Firefighters' & Police Officers' Trust ("the Trust") discontinuing all benefits and ordering the return of the amounts received in excess of his accumulated contributions. We affirm.
Hames worked as a City of Miami police officer from 1973 until his retirement in 1998. On the evening of November 7, 1995, Hames was on duty in Downtown Miami. After witnessing a robbery, Hames and his team began to chase the four fleeing suspects. Hames shot and killed one of the suspects, another suspect was shot and killed, a third was apprehended, and the fourth managed to escape. Other officers planted weapons on the suspects' bodies to explain their actions and validate the shootings. On November 13, 1995, Hames gave a sworn statement to homicide investigators wherein he covered up the actions of the other officers by falsely stating that the fleeing suspects were carrying weapons before they were shot.
Hames retired from the police force and began to receive full benefits from the Trust in February 1998. In 2001, the FBI began an investigation into the 1995 incident and other incidents involving the conduct of City of Miami police officers. On September 5, 2001, Hames was charged by information with conspiracy to obstruct justice and deprive Miami's citizens of rights, privileges, and immunities, in violation of federal law. See 18 U.S.C. §§ 242, 1512(b)(3) (2000). On September 6, 2001, Hames entered a plea of guilty, agreeing to cooperate with the federal government, and admitting that he "gave a false and misleading sworn statement regarding the circumstances surrounding the shooting . . . on November 7, 1995." Hames was adjudicated guilty and sentenced on November 15, 2004.
On July 12, 2006, the Trust notified Hames that it would be holding a preliminary hearing to determine whether Hames had forfeited his benefits pursuant to section 112.3173, Florida Statutes (2006). The preliminary hearing was held on September 6, 2006, and finding cause to proceed, a formal hearing was conducted on December 8, 2006. The Trust issued the final forfeiture order on December 21, 2006, discontinuing Hames' benefits and ordering the return of $266,336.99. This appeal followed.
Our review of the Trust's forfeiture order is governed by Florida's Administrative Procedure Act, and specifically, section *1114 120.68, Florida Statutes (2006). The Trust's final action may be set aside "only upon a finding that it is not supported by substantial competent evidence in the record or that there are material errors in procedure, incorrect interpretations of law, or an abuse of discretion." Waters v. Dep't of Health, Bd. of Med., 962 So.2d 1011, 1013 (Fla. 3d DCA 2007) (citing § 120.68(7), Fla. Stat. (2006)). Hames argues that the Trust's forfeiture order was improperly entered because: (1) the Trust lacked statutory authority to independently commence forfeiture proceedings; (2) the forfeiture proceedings commenced after the applicable statute of limitations had run; (3) Hames' federal convictions were not specified offenses for the purposes of the forfeiture statute; and (4) the administrative procedures employed by the Trust violated his due process rights. We disagree.

The Trust's Authority to Commence Forfeiture Proceedings
In Florida, a retired police officer forfeits all rights to receive public retirement benefits in excess of his or her accumulated contributions if the officer "is convicted of a specified offense committed prior to retirement." § 112.3173(3), Fla. Stat. (2006). Subsection 112.3173(5) outlines the procedures used to determine whether the retired officer was "convicted" of a "specified offense" prior to retirement, thereby requiring the forfeiture of public retirement benefits pursuant to subsection (3):
(a) Whenever the official or board responsible for paying benefits receives notice pursuant to subsection (4), or otherwise has reason to believe that the rights and privileges of any person under such system are required to be forfeited under this section, such official or board shall give notice and hold a hearing in accordance with chapter 120 for the purpose of determining whether the rights and privileges are required to be forfeited. If the official or board determines that such rights and privileges are required to be forfeited, the official or board shall order such rights and privileges forfeited.
§ 112.3173(5)(a), Fla. Stat. (2006).
Hames first contends that the Trust was not authorized to commence the instant forfeiture proceedings without filing a sworn complaint with Florida's Commission on Ethics. We disagree. The official or board responsible for paying out benefits to its qualified membersin this case, the Trustis required to give notice and hold a hearing in accordance with chapter 120, "for the purpose of determining whether such rights and privileges are required to be forfeited." § 112.3173(5)(a), Fla. Stat. (2006). The duty to determine whether a forfeiture of benefits is warranted, and the duty to eventually order the forfeiture, rests with the Trust alone, and is not subject to the involvement of the Commission on Ethics. See id.; Jacobo v. Bd. of Trs. of Miami Police, 788 So.2d 362, 363-64 (Fla. 3d DCA 2001) (affirming a forfeiture order issued exclusively by board of trustees after administrative hearing).
The Trust's obligation to conduct a forfeiture determination under chapter 120 is triggered when it "receives notice pursuant to subsection (4), or otherwise has reason to believe that the rights and privileges of any person under such system are required to be forfeited under this section." § 112.3173(5)(a), Fla. Stat. (2006) (emphasis added). In the instant case, the Trust did not receive notice of Hames' actions from an independent investigation of the Commission on Ethics pursuant to subsection 112.3173(4); instead, it became aware that Hames was convicted of two federal felonies related to his conduct as a City of Miami police officer. The Trust's *1115 administrators, therefore, had their own reasons to believe that Hames' right to receive benefits was required to be forfeited, and thus, were authorized and required by statute to conduct a forfeiture determination in accordance with chapter 120. The filing of a sworn complaint with the Commission on Ethics was not a prerequisite to the Trust's going forward with a forfeiture determination under chapter 120, and thus, the administrative procedures fell outside of the jurisdiction of Florida's Commission on Ethics.

The Non-Applicability of Statutes of Limitation
Subsection 112.3231(1), Florida Statutes (2001), provides a five-year statute of limitations for the filing of "all sworn complaints alleging a violation of this part, or of any other breach of the public trust within the jurisdiction of the Commission on Ethics." Hames incorrectly argues that if the Trust was authorized to independently commence the instant forfeiture determination, this statute of limitations acts as a complete bar to the proceedings. The Trust was authorized by statute to determine whether Hames' retirement benefits were required to be forfeited. The administrative forfeiture proceedings were outside of the jurisdiction of the Commission on Ethics, and therefore, the Trust was not required to file a sworn complaint. Accordingly, the statute of limitations applicable to the filing of sworn complaints with the Commission on Ethics is irrelevant to the instant administrative proceeding. Furthermore, the Trust served Hames with notice of the preliminary hearing in July 2006, less than five years after Hames entered his guilty plea, and thus, the limitations period in section 112.3231, Florida Statutes (2001), would not bar the Trust's administrative forfeiture determination in any event.
Arguing in the alternative, Hames contends that the four-year limitations period found in paragraph 95.11(3)(n), Florida Statutes (2001), barred the Trust from proceeding forward with the forfeiture determination. Section 95.011 provides that in the absence of a separately provided time period, the limitations periods listed in chapter 95 are applicable to any "civil action or proceeding." § 95.011, Fla. Stat. (2001). The term, "civil action," standing alone, normally refers to a lawsuit or other action filed in court. See, e.g., Miele v. Prudential-Bache Sec., Inc., 656 So.2d 470, 472 (Fla.1995). We, therefore, must resolve whether the Trust's administrative forfeiture determination was a "proceeding" requiring the application of the four-year limitations period provided by paragraph 95.11(3)(n).
Despite the Trust's suggestion to the contrary, statutory limitations periods contained in chapter 95 of the Florida Statutes, are sometimes applicable to administrative proceedings, including those held pursuant to chapter 120. See Associated Coca Cola v. Special Disability Trust Fund, 508 So.2d 1305, 1306 (Fla. 1st DCA 1987) (applying chapter 95 four-year statute of limitations to bar administrative proceeding contesting denial of workers' compensation reimbursement); Rebich v. Burdine's, 417 So.2d 284, 285 (Fla. 1st DCA 1982) (applying chapter 95 limitations period to physician's claims for services provided to workers' compensation claimant); Bishop v. State, Div. of Ret., 413 So.2d 776, 777 (Fla. 1st DCA 1982) (applying chapter 95 statute of limitations to bar administrative petition for relief conducted pursuant to chapter 120). However, the above-captioned cases have one critical element in common; each claim was filed as a direct administrative substitute for a civil action. See, e.g., Farzad v. Dep't of Prof'l Regulation, 443 So.2d 373, 375 (Fla. 1st DCA 1983) (explaining that in Bishop, the *1116 administrative claim involved an action that was an administrative substitute for a common law breach of contract suit). Thus, an administrative substitute for a civil action is a "civil action or proceeding" for the purposes of section 95.011, Florida Statutes (2001), and therefore, those administrative proceedings must be brought within any applicable limitations period in chapter 95.
Florida courts, however, have consistently refused to apply the limitations periods contained in chapter 95 to administrative disciplinary proceedings. See Sarasota County v. Nat'l City Bank of Cleveland, Ohio, 902 So.2d 233 (Fla. 2d DCA 2005); Ong v. Dep't of Prof'l Regulation, 565 So.2d 1384, 1386 (Fla. 5th DCA 1990); Winkelman v. Dep't of Banking & Fin., 537 So.2d 591, 592 (Fla. 3d DCA 1988); Farzad, 443 So.2d at 375; Landes v. Dep't of Prof'l Regulation, 441 So.2d 686, 686 (Fla. 2d DCA 1983). A disciplinary proceeding conducted pursuant to chapter 120 seeks to determine whether a penalty ought to be imposed upon the respondent as a result of past conduct. Accordingly, such an action is more appropriately described as a penal or quasi-criminal action or proceeding than a "civil action or proceeding." § 95.011, Fla. Stat. (2001).
We conclude that the Trust's forfeiture determination proceedingwhich culminated in the imposition of a significant penalty on Hameswas just the type of disciplinary action to which Florida courts have been loath to apply the limitations periods found within chapter 95. Thus, although the Trust initiated the forfeiture determination proceedings more than four years after Hames' guilty plea, it did so in a timely fashion because the four-year limitations period provided by paragraph 95.11(3)(n), Florida Statutes (2001), was inapplicable.

Hames' Acts Qualify as Specified Offenses Under Section 112.3173
Hames' retirement benefits were not required to be forfeited unless he was "convicted of a specified offense committed prior to retirement." § 112.3173(3), Fla. Stat. (2006) (emphasis added). A specified offense is defined in relevant part as follows:
6. The committing of any felony by a public officer or employee who, willfully and with intent to defraud the public or the public agency for which the public officer or employee acts or in which he or she is employed of the right to receive the faithful performance of his or her duty as a public officer or employee, realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or herself or for some other person through the use or attempted use of the power, rights, privileges, duties, or position of his or her public office or employment position.
§ 112.3173(2)(e)6, Fla. Stat. (2006). The term, "felony" refers to "any criminal offense that is punishable under the laws of this state, or that would be punishable if committed in this state, by death or imprisonment in a state penitentiary." § 775.08(1), Fla. Stat. (2006) (emphasis added).
Hames argues that the acts constituting his federal convictions under 18 U.S.C. §§ 242, 1512(b)(3) (2000), were not punishable as felonies in Florida, and therefore, he did not commit a "specified offense," nor forfeit his right to public benefits. In response, the Trust argues that the acts constituting the federal felonies to which Hames pled guilty were punishable in Florida under section 838.022, Florida Statutes (2003), which describes the felony of official misconduct. We are not persuaded by the arguments of either Hames *1117 or the Trust. Hames entered his guilty plea in September 2001. Because section 838.022 was not enacted until 2003, it cannot be retroactively applied to Hames' federal convictions. However, when Hames entered his guilty plea, section 839.25, Florida Statutes (2001), was in existence and Hames' conduct constituted official misconduct under that section. Section 839.25, Florida Statutes (2001) provides in relevant part:
(1) "Official Misconduct" means the commission of the following act by a public servant, with corrupt intent to obtain a benefit for himself or herself or another or to cause unlawful harm to another; knowingly falsifying or causing another to falsify, any official record or official document.
(2) "Corrupt" means done with knowledge that act is wrongful and with improper motives.
(3) Official misconduct under this section is a felony of the third degree. . . .
A violation of section 839.25 is a felonious breach of the public trust and a "specified offense" within the meaning of subparagraph 112.3173(2)(e)6, Florida Statutes (2006). See Jacobo, 788 So.2d at 365 (concluding that section 839.25 official misconduct "is clearly a breach of the public trust"). Therefore, if the acts constituting the federal felonies to which Hames pled guilty were punishable under section 839.25, Hames' retirement benefits were subject to forfeiture. See Shields v. Smith, 404 So.2d 1106, 1110-11 (Fla. 1st DCA 1981) (holding that acts constituting federal felonies may form basis of forfeiture order if punishable as felonies in Florida).
It is undisputed that while he was employed as a police officer, Hames gave a false, sworn statement to investigators to hide the actions of his fellow officers from the eyes of the law. Hames admitted to committing this overt act as alleged in the federal information. The Trust found that those actions amounted to official misconduct, and we conclude that the acts admitted by Hames were punishable (at the time of their commission) under section 839.25, Florida Statutes (2001). Thus, Hames' acts amounted to a breach of the public trust in violation of a "specified offense" requiring the forfeiture of Hames' retirement benefits pursuant to subparagraph 112.3173(2)(e)6, and subsection 112.3173(3), Florida Statutes (2006).

The Procedural Sufficiency of the Forfeiture Determination
Prior to the formal forfeiture determination hearing, Hames requested the Trust to execute subpoenas compelling the attendance of two FBI agents to offer their testimony. The Trust executed and served legally valid and sufficient subpoenas as requested by Hames. Subsequently, Hames was notified that the FBI witnesses could not appear at the hearing until the Department of Justice was provided with an affidavit "setting forth a summary of the testimony sought and its relevance to the proceeding." 28 C.F.R. § 16.22 (2006). Hames argues that the Trust failed to execute "effective" subpoenas in violation of his due process rights. We disagree.
The failure to procure the presence of the FBI witnesses was due to Hames' own failure to comply with federal regulations after receiving notice that the two FBI witnesses would not appear; to seek a continuance of the hearing to allow more time to comply; or to petition the circuit court for enforcement of the subpoenas pursuant to subparagraph 120.569(2)(k)2, Florida Statutes (2006), after receiving notice that the FBI witnesses would not attend the hearing. Because Hames did not do so, the non-appearance of the FBI witnesses at the formal hearing was attributable *1118 solely to Hames. Furthermore, because the record is devoid of any proffer indicating what the testimony of the FBI witnesses would have been, we are unaware of the value of the testimony Hames sought, and what effect it may have had on the proceedings. See Sullivan v. Sullivan, 736 So.2d 103, 105 (Fla. 4th DCA 1999).
After a careful review of Hames' remaining allegations of procedural errors, we are unable to say that any alleged error was material in nature, or that "[t]he fairness of the proceedings or the correctness of the action may have been impaired." § 120.68(7)(c), Fla. Stat. (2006). Thus, we hold that the administrative procedures employed by the Trust during Hames' administrative forfeiture determination were sufficient for due process purposes.

Conclusion
The Trust was authorized by statute to commence the administrative forfeiture determination against Hames without involving the Commission on Ethics. Because no statute of limitations was applicable to the disciplinary administrative action, and because the proceeding commenced within two years of Hames' adjudication of guilt in federal court, the Trust's forfeiture determination was timely. The acts that Hames admitted to carrying out prior to his retirement were punishable in Florida as a felony involving a breach of the public trust, and therefore, amounted to a specified offense for the purposes of the forfeiture statute. The procedures employed by the Trust were free from any material defects. Accordingly, we affirm the final order of forfeiture entered against Hames.
Affirmed.