962 So.2d 1011 (2007)
Jerome WATERS, M.D., Appellant,
v.
DEPARTMENT OF HEALTH, BOARD OF MEDICINE, Appellee.
No. 3D05-2546.
District Court of Appeal of Florida, Third District.
August 8, 2007.
Arthur Joel Berger, Miami, for appellant.
Wings S. Benton, for appellee.
Before GERSTEN, C.J., and SUAREZ, J., and FLETCHER, Senior Judge.
FLETCHER, Senior Judge.
Jerome Waters, M.D., appeals from a final order of the Department of Health, Board of Medicine (the Department) which revoked his license to practice medicine. Because the order is supported by competent substantial evidence and does not depart from the essential requirements of law, we affirm.
Three administrative complaints were filed against Dr. Waters in connection with *1012 his treatment of six patients between December 2000 and May 2002. The complaints alleged violations of sections 458.331(1)(m), (q) and (t), Florida Statutes (2001) which allow disciplinary action for failing to keep proper medical records, prescribing controlled substances other than in the course of the physician's professional practice, and failing to practice medicine with that level of care, skill and treatment recognized by a reasonably prudent similar physician.[1] The complaints were consolidated and heard before an administrative law judge who issued a detailed recommended order setting forth both factual findings and legal conclusions.
The law judge concluded there was clear and convincing evidence of Dr. Waters' violation of subsections (m) and (t) of the statute, but recommended that the charges of violation as to subsection (q) be dismissed. The law judge believed that the appropriate interpretation of subsection (q) was unsettled because of two conflicting prior orders of the Department, one seeming to require proof that the accused doctor was engaged in an illicit activity when prescribing the drugs in question while the other merely required proof that the doctor prescribed the drugs inappropriately or in excessive or inappropriate quantities. Notwithstanding his conclusions as to subsection (q), the judge recommended revocation of Dr. Waters' license. The Department subsequently adopted the law judge's recommended order with one exception. It rejected the judge's legal position with regard to the subsection (q) charges, concluding as a matter of law that Dr. Waters violated this subsection.
*1013 Our review of the Department's action is governed by section 120.68, Florida Statutes (2006). The Department's ruling may be set aside only upon a finding that it is not supported by substantial competent evidence in the record or that there are material errors in procedure, incorrect interpretations of law, or an abuse of discretion. See § 120.68(7), Fla. Stat. (2006). Based on a careful review of the record, we conclude that competent substantial evidence supports the factual findings of both the law judge and the Department with regard to violations of section 458.331(1)(m), (q) and (t), Florida Statutes. Further, we hold that the Department's rejection of the law judge's interpretation of the requirements of subsection (q) is within the agency's delegated range of discretion. See e.g., United Grand Condo. Owners, Inc. v. Grand Condo. Ass'n, 929 So.2d 24, 25 (Fla. 3d DCA 2006) ("An administrative agency's interpretation of a statute which it is legislatively charged with administering is entitled to great weight and should not be overturned unless clearly erroneous.") Accordingly, we affirm the order of the Department that revoked Dr. Waters' license to practice medicine.
Affirmed.
NOTES
[1] Section 458.331 reads, in pertinent part:

(1) The following acts constitute grounds for denial of a license or disciplinary action, as specified in s. 456.072(2):
. . . .
(m) Failing to keep legible, as defined by department rule in consultation with the board, medical records that identify the licensed physician or the physician extender and supervising physician by name and professional title who is or are responsible for rendering, ordering, supervising, or billing for each diagnostic or treatment procedure and that justify the course of treatment of the patient, including, but not limited to, patient histories; examination results; test results; records of drugs prescribed, dispensed, or administered; and reports of consultations and hospitalizations.
. . . .
(q) Prescribing, dispensing, administering, mixing, or otherwise preparing a legend drug, including any controlled substance, other than in the course of the physician's professional practice. For the purposes of this paragraph, it shall be legally presumed that prescribing, dispensing, administering, mixing, or otherwise preparing legend drugs, including all controlled substances, inappropriately or in excessive or inappropriate quantities is not in the best interest of the patient and is not in the course of the physician's professional practice, without regard to his or her intent.
. . . .
(t) Gross or repeated malpractice or the failure to practice medicine with that level of care, skill, and treatment which is recognized by a reasonably prudent similar physician as being acceptable under similar conditions and circumstances. The board shall give great weight to the provisions of s. 766.102 when enforcing this paragraph. As used in this paragraph, repeated malpractice includes, but is not limited to, three or more claims for medical malpractice within the previous 5-year period resulting in indemnities being paid in excess of $25,000 each to the claimant in a judgment or settlement and which incidents involved negligent conduct by the physician. As used in this paragraph, gross malpractice or the failure to practice medicine with that level of care, skill, and treatment which is recognized by a reasonably prudent similar physician as being acceptable under similar conditions and circumstances, shall not be construed so as to require more than one instance, event, or act. Nothing in this paragraph shall be construed to require that a physician be incompetent to practice medicine in order to be disciplined pursuant to this paragraph.
§ 458.331(1), Fla. Stat. (2001).